324-0414, a new health et al. was published by Arianna Kacerevich v. Silver Cross Hospital & Medical Centers, accoladed by Matthews PCM. Counsel, you may proceed. Good morning, Your Honors. May it please the Court. Counsel, my name is Arianna Kacerevich, and I represent the plaintiff's appellants in this case. As Your Honors know, this case involves 43 healthcare workers who refused to get the COVID-19 vaccine because it was contrary to their sincerely held religious beliefs and were terminated as a result. I want to start by first making it clear to this Court what this case is about and what it's not about. This case is not about the validity or enforceability of any kind of vaccine mandates. Of what? It is not about the enforceability or validity of vaccine mandates. Of the vaccine mandate? Correct. Okay, thank you. It is not about the efficacy of the COVID-19 vaccine. It's not about any of the science behind the COVID-19 vaccine. This case is only about the plaintiff's right to have their religious beliefs and their religious rights respected by their employer as explicitly provided under the Healthcare Right of Conscience Act, Governor Pritzker's executive order, and frankly, Silvercross's own vaccination policy. You're not raising any claims under the executive order. That's not a cause of action. That's correct. We are not. The executive order, however, gave rise to the vaccination policy that Silvercross ended up coming up with and the vaccination policy pursuant to which all 43 plaintiffs were fired. On appeal, we raised three issues. The first one being the improper dismissal of the Plaintiff's Healthcare Right of Conscience Act count, which is count one. Second, it's the improper dismissal of our retaliatory discharge count under Illinois common law. And third, it's the trial court's erroneous finding that the Healthcare Right of Conscience Act provides immunity against any and all kinds of claims that could be brought as long as they relate to the COVID-19 vaccine requirement. With respect to the Healthcare Right of Conscience Act, Section 5 of the Act makes it clear and expressly prohibits discrimination against any person, not just employees, not just healthcare workers, any person, based on that person's refusal to receive, obtain, or accept any form of healthcare services that are contrary to that person's conscience or sincerely held religious beliefs. I'm sorry. I don't mean to interrupt you, but just before we get into the law, I wanted to ask you a question or two about the background. Sure. There was this motion to dismiss that was denied by Judge Rickman.  And then the complaint was amended. Yes. And then rather than filing another motion to dismiss, there was a motion to reconsider the denial of the motion to dismiss. I think it was the second amendment, maybe it was the first amendment. In any event, there was a new plea. So we have a situation where there was a motion to reconsider a denial of the motion to dismiss, a complaint that no longer was operative. But as far as I can tell, nobody raised that to Judge Rickman. Did you guys have an agreement that you would just proceed on the new, I think it was on the second amended complaint, is that right? Yes, and the only difference is that the second amended complaint added additional plaintiffs because the case was filed shortly after everybody was terminated, and so people were still reaching out, and that was the only purpose of amending the complaint. Yes, but when the motion to reconsider was brought over two years later, it was based on the second amended complaint. Okay. And then your clients, if I understand the history of the case, they did raise conscience-based objections, right? That's correct. And Silver Cross rejected them? They did. So did they go through some sort of an administrative in-house appeal process? Yes, Silver Cross's vaccination policy actually allowed for religious exemptions, as well as medical exemptions, and that is what the executive order also allowed for. So they got their, we'll call it their due process in that regard. They had a hearing. There was a determination of some kind that they were not entitled to exercise, or their requests for conscientious objections were overruled, I guess. Is that right? There was no hearing. It was an internal process through Silver Cross's HR department, but all 43 plaintiffs submitted religious exemption requests together with letters explaining their religious beliefs, defending their religious beliefs, frankly, and all 43 requests were denied without any explanation. And then they were terminated. But other peoples were granted. Yes. Okay. Which calls into question why some were granted, some were not. I'm sorry. Go ahead, please. Yes. But ultimately, Section 5 of the Health Care Right of Conscience Act makes it clear that the plaintiffs have a case here under the Right of Conscience Act. Their refusal to receive the COVID-19 vaccine because it is contrary to their religious beliefs is exactly the protections that are afforded to them under Section 5 of the Act, and Silver Cross's termination of them and their denial of their religious exemptions is a violation of the Act. The only way that Silver Cross attempts to defend itself against this very clearly pleaded count is by looking to the amendment to the Health Care Right of Conscience Act, which came out a few months after this case was filed. However, that amendment does not change anything in this case. It has no bearing on this case or the issues in this case. The amendment to the Right of Conscience Act says that it is not a violation of this act for any institution or employer to take any measures or impose any requirements intended to prevent the contraction or transmission of COVID-19. In other words, it's not a violation of the Health Care Right of Conscience Act for a hospital to have a vaccine mandate. Well, as I said at the outset, we're not challenging Silver Cross's vaccine mandate. We are not alleging that they violated the Act when they adopted a vaccination policy. They violated the Act when they denied the plaintiffs timely submitted religious exemption requests. That's when they violated the Act. The amendment doesn't speak to that because the amendment, frankly, is silent on religious exemptions. It doesn't go into that. It only goes into measures intended to prevent contraction or transmission of COVID-19. And the amendment does not provide or address under what circumstances religious exemptions could be denied or shouldn't be denied. And if the drafters of the amendment wanted the amendment to include religious exemptions, they would have included that in the language of the amendment, and they didn't. So for that reason— You mean to address religious exemptions? I'm sorry? You mean to address religious exemptions? Correct. To include—to address the issue? Right. So if the drafters intended for the amendment to also protect hospitals from causes of actions relating to denied religious exemption requests that then lead to termination, as would happen here, they would have said it's not a violation of this Act to implement measures, including denying religious exemption requests and terminating employees. But that's not in the amendment. In fact, as we discussed in the legislative history of this amendment, prior versions of it actually used to have language to the effect of including terminating employees. And then they took that out. And during the debates, they explained, we don't want that there. And that shows an intentional decision to take out the termination of employees who don't want to get the vaccine for religious reasons. And the Lentz case— Did they explain that in the legislative debate? Yes, we believe that is clearly explained in the debates. What is it that's clearly explained? That they did not want to keep language in the amendment that says that it is not a violation of the Act to implement measures, including terminating employees who don't want to get the COVID-19 vaccine. The Lentz case that the trial court relied heavily on, which is the only reason that Judge Rickman reversed his original ruling on the motion to dismiss, is not applicable to this case because Lentz involved different issues. The only similarity between Lentz and our case is that in Lentz, it also happens to be a hospital that had a vaccine mandate, and that plaintiff also didn't get the COVID-19 vaccine for religious reasons, and then was terminated. But that's where the similarities stop. That's a lot of similarity. I don't—I mean, factually, yes, but the issue on appeal was not the denied religious exemption of that plaintiff. The issue on appeal, and I'm reading straight from the opinion, is the plaintiff appealed the dismissal on the grounds that the provisions of Section 13.5, which is the amendment, will not bar her action absent proof that advocates' immunization policy was intended to stop the spread of COVID. The ruling, in particular, is very telling because the ruling in that case was focused on the vaccine mandate. The ruling is just this. Having found that advocate met its burden of establishing that it adopted its immunization policy with the intention of preventing the transmission and contraction of COVID-19, we conclude that there is no genuine issue, in fact, on the question of whether advocate violated the act when it adopted its immunization policy, period. That is it. Lentz does not address religious exemption requests. It doesn't address how the vaccine mandate should be applied. It certainly doesn't address retaliatory discharge. The plaintiff in Lentz only brought a one-count complaint under the Healthcare Rights Conscience Act. In fact, she did not bring a second count alleging retaliatory discharge under Illinois common law like the plaintiffs here did, and that actually leads me to the retaliatory discharge count, which should not have been dismissed because there is no authority and no case that would justify it being dismissed. We have properly pled the elements of a retaliatory discharge claim under Illinois common law. The elements are that an employer discharged the employee in retaliation for the employee's activities and that that discharge violates a clear mandate of public policy. There's no question here that the plaintiffs were terminated. Silver Cross took them off the schedule. They were no longer allowed to keep working. They were not given any more hours. They stopped paying them. They took away all of their benefits. So, in other words, they were terminated. The plaintiffs did not quit. They did not resign. They did not sign any resignation paperwork, and all of that is properly pleaded in the count. And to the extent there's any kind of question about whether they were terminated or not, the Hinthorn case that we reference in our briefs is squarely on point because, in that case, the plaintiff was approached by her boss who told her, look, you've been getting hurt too much at work, too many workers' comp claims, so we're going to have to let you go, but here's a resignation form we want you to sign so you can leave of your own free will. But it was clear to her that whether she signs it or not, she's out. And she brought a retaliatory discharge count. Of course, the argument there for the defendant was she quit. We didn't fire her. And the Illinois Supreme Court said that's not correct. An employer cannot escape responsibility for an improper discharge simply because he never uttered the words, you're fired. And that's what happened here. Silver Cross didn't want to utter the words, you're fired. But, in effect, they did fire them because it took them off the schedule. They didn't allow them back to work unless they were to get the COVID-19 vaccine. The public policy mandate is also very clear. We state in our brief it's found in the state's constitution and statute and when they are silent in the judicial decisions. Here, there are multiple sources of public policy, the most obvious one being the Right of Conscience Act itself. Sections 2 of the act literally says, it is the public policy of the state of Illinois to respect and protect the right of conscience of all persons who refuse to obtain, receive, or accept healthcare services and medical care and to prohibit all forms of discrimination, disqualification, coercion upon such persons or entities by reason of their refusing to act contrary to their conscience. But, besides the Right of Conscience Act, there's other public policy mandates that are in play here. Title VII, the Illinois Human Rights Act. So, the plaintiffs have properly pled the public policy mandate that was violated when they were terminated simply for not wanting to get a vaccine that was contrary to their sincerely held religious beliefs. This count should not have been dismissed regardless of how the trial court were to rule on the Right of Conscience Act count. Retaliatory discharge has nothing to do with the Right of Conscience Act count. It's not inextricably linked to the Right of Conscience Act and it should have survived in any event. The public policy that you point to to support your wrongful term, I'm sorry, to support count two, that's contained in the statute. So, they are linked, are they not? We don't need to have a claim under the Right of Conscience Act in order to have a retaliatory discharge count under Illinois common law. We could have just brought a one count complaint alleging retaliatory discharge under Illinois common law and never had a count under the Right of Conscience Act. What I'm saying is, under count two, you point to a public policy. Yes. And that policy is codified in the statute. Yes. So, they are linked. They are related in the sense that the public policy is found in the Right of Conscience Act. I'm just saying that we don't need to have a claim under the Right of Conscience Act in order to be able to point to the public policy that is stated in the Right of Conscience Act, which is violated by wrongful termination. Is it in any other statutory enactment? Yes, I believe Title VII has a similar statement of public policy. The Illinois Human Rights Act also says that employers cannot put any conditions on employment that would require persons to violate or forego a sincerely held practice of their religion. So, it's a generic policy in the state is what you're arguing. Well, I think it's a very well-known and well-established one that is in our Constitution. It is in Title VII. It's in the Right of Conscience Act. It's in the Human Rights Act. It is that fundamental of a right. People should have a right to practice their religious beliefs and observe their religion without... So, what you're saying is policy is spread throughout statutory law. Yes. Thank you. Your time is up. But you will have time in court. Thank you, Your Honors. May it please the Court, my name is Matt DeCiani and I represent the defendant, Silver Cross Hospital and Medical Centers. Your Honors, plaintiffs are trying to make this case far more complicated than it actually is. Section 13.5 of the Health Care Right of Conscience Act states that an employer has immunity from any action it takes to enforce any policy intended to stop the spread of COVID-19. That's what Silver Cross was doing here. It was enforcing a policy that it implemented to stop the spread of COVID-19. When it denied plaintiffs' request for religious exemptions, it was doing that in connection with its policy to stop the spread of COVID-19. Plaintiffs are trying to read... Are there any limits on that immunity? If it's a reasonable policy... Oh, there's reasonableness as a limit, right? Sure, sure, right. There's reasonableness. But, I mean, there hasn't been any allocation, evidence, anything introduced in the record that shows that there was anything unreasonable about what Silver Cross did here. I mean, they simply implemented a COVID-19 vaccine mandate that gave employees an option to submit a religious exemption. Valid religious exemptions weren't submitted. It denied them. The plaintiffs refused to receive the COVID-19 vaccine. And they were terminated. That clearly falls under Section 13.5 of the HCRCA. Could you refresh my memory? I don't remember the statute actually using the word immunity. It just says that it's not a violation. Oh, that's correct. That's correct, yes. I don't know that we really need to go down this rabbit hole of whether it's immunity or not immunity. It's either a violation of the statute or it's not. That's a fair point, Your Honor. Thank you. Thank you, yes. Your Honors, it's telling that plaintiffs cannot cite one case where a court found that they stated a cause of action. They can't cite one case where an employee was fired, separated from employment for refusing to receive a vaccine mandate, and the court found that it was a violation of the Healthcare Right of Conscious Act. Meanwhile, we cite four. We cite Pruniak, which was a second district case. We cite Lenz, which was a first district case. We cite Glass, which was a fourth district case. And then we cite Snyder, which was a decision by Judge Manish Shah, the Northern District of Illinois. That's four cases holding that the claims that plaintiffs brought here are not valid. Now, plaintiffs claim, I think I heard plaintiffs' counsel claim that Lenz is not on point because that case didn't deal with the denial of religious exemption requests. Your Honor, that's not true. Lenz did deal with the denial of religious exemption requests. In that case, the plaintiff submitted a request for a religious exemption from advocates' immunization requirements. That request was denied because the hospital said that it was based on misinformation. The plaintiff filed an appeal from the denial stating that the advocate improperly denied the request. And the First District Appellate Court found that the plaintiff's claims were barred by the Healthcare Right of Conscience Act. So it's hard to find a case with facts more on point than Lenz is here. And I think that the First District's reasoning provides an excellent analysis of the relevant issues in this case. Now, I know plaintiffs talked about Section 5 of the HCRCA. I think I heard plaintiffs' counsel say that we didn't address that or that the plaintiffs are entitled to bring a cause of action under that section. I mean, that's simply not true. Section 5 of the HCRCA states that, and I'm going to read it right here, it shall be unlawful for any person, public or private institution, or public official to discriminate against any person in any matter related to their provision of any particular form of healthcare services contrary to his or her conscience. The statute defines healthcare services as patient care. So to be covered by Section 5 of the HCRCA, an employee or someone has to be providing patient care. Refusing to receive a vaccine is not providing patient care. Plaintiffs were not discharged because they refused to provide patient care. They refused to engage in some kind of controversial medical procedure like abortion, euthanasia. They were discharged because they refused to receive a vaccine. So they wouldn't be able to bring a claim under Section 5 anyways. On top of that, Your Honors, so who's the object under that act you just cited? So that act was intended to allow healthcare providers not to be forced to perform controversial medical procedures like abortion and euthanasia. It was passed in 1977, just a couple years after Roe v. Wade. So you're saying the object is to protect the healthcare provider. That's exactly right. To protect the healthcare provider from having to perform an abortion.  Additionally, Your Honors, Section 9 of the HCRCA also bars plaintiffs' claims. That section states that no corporation which owns a healthcare facility shall be liable for refusing to perform healthcare services contrary to their conscience. Allowing unvaccinated employees to perform healthcare services was contrary to Silver Cross's conscience. Where was Silver Cross's conscience set forth? In its mission statement, which was attached as an exhibit to the motion to dismiss. That stated that Silver Cross's mission is to improve the health of those we serve and advance wellness in our community. The mission statement was incorporated into Silver Cross's vaccine policy. So allowing plaintiffs to perform healthcare services while unvaccinated expressly contravenes Silver Cross's policy of protecting patients and employees and the health of the community. Well, let me ask this just maybe off the reservation here. Silver Cross could decide not to get the vaccine, couldn't it? Silver Cross could have decided not to impose a vaccine mandate. Now, in August of 2021, Governor Pritzker issued an executive order requiring all hospitals to implement. But they could have challenged that, couldn't they? That's correct. I don't care what he wrote. Executive orders aren't running everything anymore. But there still are courts. That's correct. That's correct. I mean, in addition to the executive order, Silver Cross implemented the vaccine mandate because it didn't want its employees spreading COVID to patients with cancer, patients with serious illnesses. So that was Silver Cross's... Yeah, but there's also flow of money too coming from, I assume, the executive branch. Yeah, that's certainly possible, Your Honor. We see that federally. Right. Yes, we have. But I'm not sure off the top of my head. That's certainly possible, yes. So I'd like to turn to plaintiff's retaliatory discharge claim. Your Honor, plaintiffs split themselves out of court on the retaliatory discharge claim. Paragraph 19 of the second amended complaint says, Cop was constructively discharged by Silver Cross on October 13, 2021. Paragraph 21 says, Bogda was constructively discharged by Silver Cross. And so on and so forth for every plaintiff. The complaint alleges that every single plaintiff was constructively discharged. Binding case law holds that retaliatory discharge does not apply to employees who have been constructively discharged. We cite at least four cases in our brief stating that. Hartline v. Illinois Power, Fisher v. Lexington Health Care, Metzger v. DeRosa, Pellet Court case Welch v. Commonwealth Edison. I believe I heard plaintiff's counsel say that the employees were terminated, you know, in effect. I mean, that's not what she pled in her complaint. She pled in her complaint that the employees were constructively discharged. Binding case law holds that constructive discharge does not apply to retaliatory discharge. So an employee who's been constructively discharged can't bring a retaliatory discharge claim. I believe I heard plaintiff's say that Henthorne held that an employee who has been constructively discharged could bring a retaliatory discharge claim. Your Honors, that's not what Henthorne held. Henthorne held that the plaintiff alleged that she had been discharged, not constructively discharged. So I'm just reading from Henthorne right here, and this is on 530-531. The court said, We agree that plaintiff has sufficiently alleged that she was discharged, but wish to make abundantly clear that we are not now endorsing the constructive discharge concept rejected by the appellate court in Stellar. We have no need to rule upon the viability of a constructive discharge theory at this time because the plaintiff alleges that she was actually and not constructively discharged. So it's simply not true that Henthorne held that a plaintiff who has been constructively discharged can bring a retaliatory discharge claim. I mean, frankly, Henthorne's irrelevant because At least this far, right? Yes, at least so far, yeah. Because we have no Supreme Court jurisprudence on that issue? Well, we actually do, Your Honor. We have several Supreme Court cases holding that constructive discharge, someone who's been constructively discharged cannot bring a retaliatory discharge claim. And again, those cases are cited in our brief, but Hartline, Fisher were two of them. And then finally, Your Honors, turning to the last point here, even if the plaintiffs had not pled themselves out of court on the retaliatory discharge claim, they have not identified any clearly mandated public policy that was violated here. A retaliatory discharge requires a clear violation of clearly mandated public policy like firing someone for exercising their workers' compensation rights, firing someone for whistleblowing. You cannot plausibly claim that it was a violation of clearly mandated public policy to enforce a vaccine mandate in 2021 and terminate someone for not complying with that vaccine mandate. As you pointed out, Justice Anderson, I mean, any conceivable public policy that plaintiffs violated would maybe be contained in the Healthcare Rights Conscious Act. So, I mean, if that claim fails, which it clearly does because of Section 13.5, so does any claim that Silver Cross violated clearly mandated policy. You said plaintiffs earlier. You're talking about the defendants, Silver Cross. My apologies. Sorry about that. So, simply put, plaintiffs, I mean, one cannot plausibly argue that there was any violation of a clearly mandated public policy here when Silver Cross constructively discharged plaintiffs. Thank you. One question.  If Silver Cross had ignored and decided to go the other route and allow their employees to go on unvaccinated, would you argue that that violates a clearly stated public policy as it existed at the time? Yeah, I think you could possibly say that. I mean, as you can see with the passage of Section 13.5 of the HCRCA, it was the state's public policy at that time. To stop people from dying in a global pandemic that only occurs every century or so? Exactly. Okay. Yeah. Thank you. No further questions. Thank you, counsel. Thank you. Counsel, you may reply. Your Honors. Justice Anderson, I'm glad that you caught counsel right away when he mentioned immunity in the amendment. In fact, the word immunity doesn't come up anywhere in the Health Care Right of Conscience Act, not just the amendment. There is no blanket immunity. And Your Honor asked if there are limits on that immunity. There have to be limits on immunity. There's no immunity to begin with, but to suggest that there is blanket immunity would lead to absurd results. I mean, imagine if— It sounds like we're agreeing there is no immunity. Yes. So I don't know that we need to discuss it. Okay. I will move on. Counsel also mentioned that plaintiffs cannot count outside a single case where somebody's religious exemptions were denied, and that ended up being found to be a violation of the Health Care Right of Conscience Act. Well, because our case is the first of its kind. All the other cases that defendant relies on focus on the vaccine mandates and challenge the vaccine mandates. The Glass case, the Kroenia case, those all were cases challenging the vaccine mandates. Glass was a petition for a TRO seeking to not have the vaccine mandates enforced. There were no religious exemptions even involved there. Counsel made a point about not granting the religious exemptions because Silvercross was so concerned about not wanting to spread COVID. It did grant a bunch of them. So if the concern was not to spread COVID, then they would have just denied all religious exemptions, period. They didn't. They granted some. They denied R43. They denied your what? They denied R43, religious exemption requests. And to suggest that receiving a vaccine is not considered part of health care or health care services is not correct, the way that health care is defined in the act itself shows that vaccines are included. The Vandersand case makes it abundantly clear that health care includes medication. Vaccines are medications. And to the extent there's still any confusion. But the object of that legislation was to protect the provider, wasn't it? We disagree that that was the only object of it because it's not focused on just abortions or anything like that. And the House... I'm not talking about the procedure. Provider is to protect the provider. The provider could say, and Silvercross could clearly say, no, we don't give those untested vaccines. No. That was a defendant's citation to Section 9 of the act. It says no corporation or health care facility shall be civilly or criminally liable to any person for refusing to provide health care services. What that had in mind was your religious hospital where a patient comes in and wants an abortion and the hospital doesn't want to provide it. They don't want to have a lawsuit on their hands simply because it is against that facility's religious... Yeah, that's a provider. Silvercross is a provider. Right. But here, Silvercross is not providing anything here. The health care that is in question here is the plaintiffs receiving a vaccine. Silvercross has nothing to do with that. The health care involves... It involves both giving and providing care and receiving it. So the plaintiffs did not want to receive the COVID-19 vaccine. It is covered by that. Counsel's point on the constructive discharge, I have to address that, Your Honors. The count two of the complaint is titled retaliatory discharge. It is not titled constructive discharge. The use of the phrase constructively discharge is merely in the descriptive paragraphs of who the plaintiffs are. But count two of the complaint does not use constructive discharge in there. It actually describes how they were terminated. It uses language that says, you know, paragraph 17, Silvercross advised all of its employees that any employee who is not fully vaccinated will be separated from employment. We state and make abundantly clear that the plaintiffs were not allowed to come back to work. They were taken off the schedule. They stopped paying them. The inference there, I mean, we have to remember this is at the pleading stage. It's a motion to dismiss all well pleaded facts. Separated means discharge, right? Yes. Separated from employment. Correct. And to be removed from the schedule and not paid anymore. That was the mechanism of separating them from their employment. The inference is that it's a termination, not a constructive discharge. And if I could just finish that thought. It's fundamental that at the dismissal stage, we're required to draw all reasonable inferences from well pleaded facts in the plaintiff's favor. This principle would mean nothing if those inferences have to be pleaded, making them allegations, not inferences. And I think that summarizes the point here. They were terminated. And the Health Care Right of Conscience Act and the amendment does not abrogate a common law tort like retaliatory discharge. Questions? Thank you. Thank you, Your Honors. Thank you for your time. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement and written disposition shall issue.